Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorneys for Plaintiff Cari Rockwell*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Cari Rockwell, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Lincoln Life Assurance Company of Boston, | |
| Defendant. | |

Now comes the Plaintiff Cari Rockwell (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendant, she states:

## *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Micro Focus (US), Inc., a Maryland corporation (hereinafter referred to as the "Company"), sponsored, administered and purchased a group long-term disability insurance Policy (hereinafter referred to as the "Policy") which was issued to the Company in the State of Maryland, and is fully insured by Lincoln Life Assurance Company of Boston (hereinafter referred to as "Lincoln").

4. The specific Lincoln group long-term disability ("LTD") insurance Policy is known as Group Policy No. GF3-830-510682-01 (the Policy is attached hereto as Exhibit "A").

5. The Company's purpose in purchasing the Policy was to provide disability insurance and income protection for its employees.

6. Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Micro Focus (US), Inc. Long-Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.

7. At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8. Upon information and belief, Lincoln functioned as the claim administrator of the Plan and Policy.

9. Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln.

10. Lincoln operated under a structural financial conflict of interest because it fully insured the Policy and made every decision regarding whether Plaintiff was disabled in her LTD claim.

11. In administering Plaintiff's claim, Lincoln operated under dual and conflicting roles as the decision maker with regard to whether Plaintiff was disabled, and also the payor of benefits if it found she was disabled.

12. Lincoln's structural financial conflict of interest existed and manifested because if it found Plaintiff was disabled, it was then financially liable to pay her LTD benefits.

13. The Company, Lincoln and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

14. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

### *General Allegations*

15. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy, and a "participant" as defined by 29 U.S.C. § 1002(7).

16. Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from the Plan and the relevant Policy pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, from any other Company Plan, and/or from the Company itself as a result of being found disabled in this action, from the date she was first entitled to these benefits but was denied them, through the date she returned to work, on November 22, 2019.

17. After working for the Company as a loyal employee in the occupation of a Sales Executive Embedded, on or about August 6, 2018, Plaintiff became disabled from working

in that occupation due to a disabling diagnosis/medical condition that is not a "Pre-Existing Condition," as that term is defined in the Policy.

18. Subsequently, on November 22, 2019, Plaintiff returned to work for a different employer.

19. Following the onset of her disability, Plaintiff filed a claim for short-term disability ("STD") benefits which was administered, reviewed and approved by Lincoln.

20. After reviewing the evidence supporting Plaintiff's STD claim, Lincoln concluded she met the definition of disability set forth in the Company's self-insured STD Plan (STD Summary Plan Description attached hereto as Exhibit "B") for the maximum duration of the time that STD benefits could be paid, which was for ninety (90) days.

21. Plaintiff's STD benefits have been fully paid by the Company and those benefits have been exhausted.

22. Following the exhaustion of her STD claim/benefits, Plaintiff then filed a claim for LTD benefits under the relevant Policy with Lincoln.

23. As referenced, Lincoln made every decision in Plaintiff's LTD claim regarding whether she was disabled pursuant to the terms of the relevant Policy.

24. Upon information and belief, the relevant Lincoln LTD Policy's definition of disability governing Plaintiff's LTD claim is as follows:

"Disability" or "Disabled" means:

    i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

25. The relevant Lincoln LTD Policy contains the following exclusion:

-4-

**Pre-Existing Condition Exclusion:**

This Policy will not cover any Disability or Partial Disability:

1. which is caused or contributed to by, or results from, a Pre-Existing Condition; and
2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage. A Pre-Existing Condition does not include a condition admitted in the application which was not excluded by a signed waiver rider."

26. In support of her claim for LTD benefits, Plaintiff submitted to Lincoln medical and other evidence which supported her allegation that she met the "Own Occupation" definition of disability defined in the relevant Policy, due to a disabling diagnosis/medical condition that is not a "Pre-Existing Condition," as that term is defined in the Policy.

27. In support of her claim, Plaintiff submitted to Lincoln a medical questionnaire completed by her board-certified treating physician who described the impairments that were preventing Plaintiff from working in her "Own Occupation."

28. Plaintiff's disabling impairments that precluded her from working in her "Own Occupation" from August 6, 2018 through November 22, 2019 were ***directly related*** to her disabling diagnosis/medical condition that is not a "Pre-Existing Condition," as that term is defined in the Policy.

29. As part of its review of Plaintiff's LTD claim, Lincoln obtained two (2) medical records only "paper reviews" (meaning the consultants ***never*** saw or physically examined Plaintiff) from two (2) of *its own* medical professionals, named Derek A. Stern, Ph.D. and Edward H. Drummond, M.D.

30. In his October 4, 2018 Consulting Physician Peer Review, Dr. Drummond concluded that as it related to Plaintiff's "Pre-Existing Conditions", "The medical record supports impairment…[Plaintiff's] limitations were at a level that precluded the ability to

1 perform work-related activities when the claimant stopped work on 8/7/18…the medical record provides support that impairment and limitations will continue…"

31. In his October 4, 2018 Consulting Physician Peer Review, Dr. Drummond did not comment on Plaintiff's restrictions, limitations or impairments resulting from or caused by her disabling diagnosis/medical condition that is not a "Pre-Existing Condition."

32. In her November 14, 2018 Memorandum, Dr. Stern erroneously concluded, "the record thus indicated that the insured received treatment within three months prior to her effective date of coverage for the condition that led her to assert impairment as of 08/07/2018."

33. Dr. Stern's assertion that Plaintiff's "condition that led her to assert impairment as of 08/07/2018" is a "Pre-Existing Condition" is erroneous, illogical, implausible and unlawful because it is not supported by any medical or other documentation in Plaintiff's claim.

34. As a result of their employment with Lincoln, Plaintiff alleges Drs. Drummond and Stern are biased and operated under their own conflicts of interest when they performed medical records reviews and rendered opinions in Plaintiff's claim.

35. Drs. Drummond and Stern's bias and conflicts of interest led to their selective review of Plaintiff's evidence, which included their deliberate and blatant de-emphasizing of her evidence that proved she was disabled due ***solely*** to a diagnosis/medical condition which was not a "Pre-Existing Condition," as that term is defined in the Policy.

36. Due to their bias and conflicts of interest, Drs. Drummond and Stern may have incentives to protect their own employment with Lincoln by providing medical records only "paper reviews," where they selectively review, ignore, and de-emphasize evidence that proves an insured/claimant is disabled and entitled to benefits, such as occurred in Plaintiff's claim, so they can provide opinions favoring Lincoln and which allow it to deny the claim.

37. Dr. Stern's bias and conflicts of interest are the reason he ultimately rendered an opinion that was adverse to Plaintiff in her LTD claim, namely, that her disabling diagnosis/medical condition is a "Pre-Existing Condition" and her claim was not covered by the Policy.

38. Dr. Drummond's bias and conflicts of interest are the reason he ultimately failed to consider, comment on or even reference Plaintiff's disabling diagnosis/medical condition which is not a "Pre-Existing Condition" and/or the restrictions, limitations and impairments which resulted from or were caused by that diagnosis/medical condition.

39. Lincoln's financial structural conflict of interest led it to unlawfully accept and use Dr. Stern's biased opinion that Plaintiff's disabling diagnosis/medical condition is a "Pre-Existing Condition" so it could deny her LTD claim and benefits.

40. In a letter dated November 15, 2018, Lincoln informed Plaintiff it was denying her claim for LTD benefits after using Drs. Drummond and Stern's opinions to support its erroneous conclusion that, "…we have determined that your condition is subject to the pre-existing condition exclusion and we must deny your claim for benefits."

41. Lincoln's denial of Plaintiff's claim based on Drs. Drummond and Stern's biased medical records only "paper reviews" and opinions is an abuse of discretion and is an ERISA procedural violation because in relying on their erroneous opinions they did not comply with ERISA's regulations for numerous reasons, including failing to provide Plaintiff with a "full and fair" review.

42. Plaintiff alleges that Lincoln's denial of her LTD claim after nothing improved or changed with regard to her disabling medical condition when it previously concluded she was unable to work in her occupation for the entire STD timeframe (using *essentially the same definition of disability*)(*See* Exhibit "B")*,* is evidence of its conflict of interest at work, illogical and an abuse of discretion.

43. Plaintiff alleges Lincoln's denial of her claim based on its finding that her disabling diagnosis/medical condition is a "Pre-Existing Condition" as set forth in the Policy is relevant, palpable evidence of its financial conflict of interest at work because Plaintiff's LTD claim created significantly more liability for Lincoln in terms of benefits that it owed her as compared to her STD claim.

44. Lincoln's conclusion that Plaintiff's disabling diagnosis/medical condition is a "Pre-Existing Condition," as that term is defined in the Policy, was motivated by its financial conflict of interest and its desire to save money by not having to pay her LTD benefits.

45. Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed Lincoln's November 15, 2018 denial of her LTD claim.

46. In support of her claim and appeal, Plaintiff submitted to Lincoln additional reliable, credible, compelling medical and other evidence which supported her allegations she was disabled and met the "Own Occupation" definition of disability set forth in the Policy due ***solely*** to a diagnosis/medical condition that is not a "Pre-Existing Condition."

47. Plaintiff submitted to Lincoln a May 31, 2019 narrative letter authored by her board-certified treating physician who confirmed, "As of August 7, 2018, [Plaintiff] has not been able to reliably or consistently perform any tasks other than basic activities of daily living. This severe, ongoing limitation in reliable and consistent functioning is likely due mainly to her [non-Pre-Existing] symptoms/diagnosis."

48. The same physician confirmed in his May 31, 2019 narrative letter that Plaintiff's disabling diagnosis/medical condition which precluding her from being able to work is "…is not a pre-existing condition as defined in the [LTD Policy] because [Plaintiff] was not treated for [this medical condition] during the pre-existing period (8/1/17-10/31/17)."

49. Plaintiff submitted to Lincoln a June 4, 2019 narrative letter authored by another treating medical professional who concluded, "…it is my medical opinion that

[Plaintiff's alleged disabling diagnosis/medical condition] is disabling in and of itself, and is the reason she became unable to continue working in August of 2018."

50. The same treating medical professional concluded in her June 4, 2019 narrative letter, "it is my opinion that [Plaintiff's disabling] diagnosis is not a 'Pre-Existing Condition' as defined in the [LTD Policy], as she was not treated for [it] during the pre-existing period…"

51. The same treating medical professional completed a Medical Source Statement dated June 4, 2019, whereby they set forth work limitations Plaintiff experienced as of August 2018 which resulted *__solely__* from her disabling diagnosis/medical condition which was not a "Pre-Existing Condition" as that term is defined in the Policy.

52. In the June 4, 2019 Medical Source Statement, the medical professional concluded that Plaintiff would miss work "more than three or four times per month" due *__solely__* to her disabling diagnosis/medical condition which was not a "Pre-Existing Condition."

53. Further supporting her claim, Plaintiff submitted a Vocational Assessment (evaluation) dated June 10, 2019 from a certified vocational expert, who after personally interviewing Plaintiff and reviewing the relevant evidence in her claim, along with the "Own Occupation" definition of disability and "Pre-Existing Condition Exclusion" set forth in the Policy, concluded that based *__solely__* on Plaintiff's disabling diagnosis/medical condition that is not a "Pre-Existing Condition," the following, "…it is my professional opinion to a reasonable degree of medical probability that [Plaintiff] is totally disabled from working in her own occupation…"

54. Plaintiff also submitted to Lincoln a June 21, 2019 sworn affidavit authored by herself, wherein she confirmed she remained unable to work in her "Own Occupation" and that due to her disabling diagnosis/medical condition that is not a "Pre-Existing Condition," she had been unable to work in her "Own Occupation" since August 6, 2018.

55. Plaintiff also confirmed in her June 21, 2019 sworn affidavit that her disabling diagnosis/medical condition that is not a "Pre-Existing Condition," and its resulting disabling

-9-

1  symptoms and limitations had not improved in any manner that would have allowed her to
2  return to her "Own Occupation" since August 6, 2018.

3        56.     Plaintiff also submitted to Lincoln updated medical records from each of her
4  treating medical professionals.

5        57.     Plaintiff also submitted to Lincoln a list of her current medications, as well as
6  the adverse side effects those medications cause her to experience and how they preclude her
7  from being able to sustain work in her Own Occupation as a Sales Executive Embedded.

8        58.     As part of its review of Plaintiff's LTD claim, Lincoln obtained a medical
9  records only "paper review" (meaning the consultant **_never_** saw or physically examined
10 Plaintiff) from another one of *its own* employees, Amy Feitelson, M.D.

11       59.     Due to her employment with Lincoln, Plaintiff alleges Dr. Feitelson is biased
12 and operated under her own conflicts of interests.

13       60.     Dr. Feitelson's bias and conflicts of interest led to her selective, one sided and
14 biased review of Plaintiff's evidence and is the reason she deliberately and blatantly de-
15 emphasized and minimized Plaintiff's evidence so she could render an opinion that favored
16 Lincoln, namely, that Plaintiff's disabling diagnosis/medical condition was a "Pre-Existing
17 Condition."

18       61.     Plaintiff alleges Dr. Feitelson's bias, conflicts of interest and employment with
19 Lincoln are the reasons she ultimately rendered opinions that were adverse to Plaintiff and
20 her claim.

21       62.     In her July 11, 2019 "ICP Memo", Lincoln's own employee/medical
22 consultant, Dr. Feitelson, concluded, "The medical record supports [impairment] from 8/7/18
23 to the present…due to symptoms of…" the diagnosis/medical condition Plaintiff asserts is
24 not a "Pre-Existing Condition."

25

26

-10-

63. Based on Dr. Feitelson's July 11, 2019 report, she agreed with the opinions of Plaintiff's treating medical professionals, that Plaintiff was disabled and unable to work in her "Own Occupation" as of August 7, 2018 due to her alleged diagnosis/medical condition.

64. Based on Dr. Feitelson's July 11, 2019 opinion, ultimately the only remaining issue in Plaintiff's claim is whether her disabling diagnosis/medical condition is a "Pre-Existing Condition," as that term is defined in the Policy.

65. In her July 11, 2019 "ICP Memo", Dr. Feitelson concluded Plaintiff's diagnosis/medical condition that precluded her from working was a "Pre-Existing Condition," which meant Plaintiff was not entitled to LTD benefits.

66. In a letter dated July 17, 2019, Lincoln provided Plaintiff with the report authored by Dr. Feitelson and requested for Plaintiff to "review and comment" on it if she desired.

67. In a four (4) page letter dated July 30, 2019, Plaintiff responded to Lincoln's July 17, 2019 letter by pointing out that based on Dr. Feitelson's July 11, 2019 report, it was clear she agreed with the opinions of Plaintiff's treating medical professionals, namely, that Plaintiff was disabled and unable to work in her "Own Occupation" as of August 6, 2018 due to a diagnosis/medical condition that was not a "Pre-Existing Condition."

68. In her July 30, 2019 letter, Plaintiff reiterated all of the points and issues she previously conveyed to Lincoln for why she was unable to work in her "Own Occupation."

69. In her July 30, 2019 letter, Plaintiff informed Lincoln why her LTD claim and her allegations were supported by the opinions of her treating/evaluating medical and other professionals' opinions.

70. In a letter dated September 10, 2019, Lincoln informed Plaintiff, "our position remains the conditions for which [Plaintiff] is requesting disability benefits were pre-existing and subject to the pre-existing condition exclusion" and invited Plaintiff to provide any additional information she wished to prove otherwise.

-11-

71. On October 11, 2019, Plaintiff submitted to Lincoln an October 8, 2019 response letter authored by her board-certified treating physician who reviewed Lincoln's September 10, 2019 letter and Dr. Feitelson's July 11, 2019 report and confirmed, "Dr. Feitelson misinterpreted my narrative letter. I did not treat [Plaintiff for her disabling diagnosis/medical condition] until long after the pre-existing timeframe."

72. In his October 8, 2019 response letter, the same physician confirmed, "[Plaintiff] continued to be disabled from working in any occupation" due to her disabling diagnosis/medical condition that is not a "Pre-Existing Condition."

73. In a letter dated October 11, 2019, Plaintiff informed Lincoln we "believe we have perfected the record so that [Plaintiff's] claim [could] be approved" and requested that "to the extent that is not the case, [Lincoln] please immediately communicate any issues with us before rendering a decision."

74. Lincoln did not respond to Plaintiff's October 11, 2019 letter.

75. In a letter dated October 24, 2019, Plaintiff's counsel informed Lincoln, "As I have stated in prior letters, if [Lincoln] required any additional clarification from [Plaintiff], we request it inform us of what information should be submitted in order for [Plaintiff] to perfect her LTD claim. [Plaintiff and her treating medical professionals] are available and happy to speak with [Lincoln] if additional clarification is required."

76. Lincoln did not respond to Plaintiff's October 24, 2019 letter.

77. In a letter dated November 12, 2019, Plaintiff informed Lincoln "Since my October 24, 2019 letter, my office has attempted to reach you via telephone on October 28, 2019, November 4, 2019, November 6, 2019 and November 8, 2019. Further, my firm [emailed a Lincoln employee as their email address] on October 30, 2019 and November 1, 2019…To date, we have been unable to reach you and have not received any response to the above noted telephone calls or emails."

-12-

78. In her November 12, 2019 letter, Plaintiff further informed Lincoln, "At this time, [Lincoln] is *__sixty-seven (67) days__* into its review of [Plaintiff's] claim and has not made a decision or advised as required by ERISA that it needs an additional forty-five (45) days beyond its initial forty-five (45) days to complete its review" and requested for Lincoln to render a determination in her claim within seven (7) days of the letter. (original emphasis).

79. In a letter dated November 20, 2019, Lincoln informed Plaintiff it was denying the appeal of her claim for LTD benefits after erroneously concluding, "…our position remains the disabling conditions in which [Plaintiff] is requesting disability, is pre-existing and therefore excluded from coverage."

80. In its final denial dated November 20, 2019, Lincoln notified Plaintiff she had exhausted all administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

81. Lincoln issued and fully insured a group life insurance Policy ("Life Policy"), providing life insurance coverage in the amount of $370,000 to Plaintiff which contained a benefit whereby the Life Policy's premiums were waived (the "Life Waiver of Premium benefit – LWOP claim") if Plaintiff met the Life Policy's definition of "Totally Disabled."

82. The Life Policy's definition of "Totally Disabled" governing Plaintiff's LWOP benefit/claim is as follows: "Total Disability' or 'Totally Disabled' means the complete inability, as a result of Injury or Sickness, to perform the Material and Substantial Duties of Any Occupation."

83. The definition of "Totally Disabled" set forth in the Life Policy is significantly more difficult to meet than the "Own Occupation" definition of disability governing Plaintiff's LTD claim (*See* paragraph no. 24).

84. In a letter dated November 15, 2019, Lincoln informed Plaintiff that, "Based on medical information currently in our files, we have approved the above referenced claim for the Waiver of Premium Benefit under your Group Life Insurance Policy."

85. When Lincoln approved Plaintiff's LWOP claim on November 15, 2019, it did so after finding she met the definition of "Totally Disabled" in the Life Policy and that she was *unable to perform the material and substantial duties of any occupation.*

86. Plaintiff alleges Lincoln's denial of her LTD claim and benefits, while approving her LWOP claim/benefit when the LTD claim posed *significant financial liability* for Lincoln compared to the LWOP claim/benefit (*where it had no financial liability to Plaintiff unless she died*) is relevant, palpable evidence of its financial conflict of interest at work and a motivating factor for why it concluded in Plaintiff's LTD claim that she was disabled due to a diagnosis/medical condition which is a "Pre-Existing Condition."

87. Lincoln's structural conflict of interest led it to unlawfully accept and rely on Dr. Feitelson's biased opinion that Plaintiff's disabling diagnosis/medical condition is a "Pre-Existing Condition" so it could continue to deny her claim for LTD benefits.

88. The biased, selective, cherry-picked and unfavorable determination by Dr. Feitelson that Plaintiff's disabling diagnosis/medical condition was a "Pre-Existing Condition" was motivated by and a direct result of her conflicts of interest as referenced herein and her desire to protect her employment with Lincoln.

89. When it failed to respond to Plaintiff's October 11, 2019 and October 24, 2019 letters, Lincoln also failed to provide Plaintiff with a "full and fair" review and failed to engage Plaintiff in a "meaningful dialogue" which is required by Ninth Circuit law and ERISA.

90. Lincoln's ERISA procedural violation in failing to engage Plaintiff in a meaningful dialogue not resulted in its failure to obtain a complete and accurate picture of Plaintiff's disabling diagnosis/medical condition, but also her resulting symptoms and limitations that corroborated her credible allegations she was unable to work in her "Own Occupation" from August 6, 2018 through the date she returned to work, November 22, 2019.

91.     If Lincoln had engaged Plaintiff in a meaningful dialogue regarding the deficiencies it believed existed in her claim, she and her treating/evaluating medical and other professionals could have perfected the record and her claim as required by federal law.

92.     If Lincoln had engaged Plaintiff in a meaningful dialogue before it denied her claim as required by ERISA and Ninth Circuit law, it would have approved her claim rather than denied it.

93.     As set forth by Lincoln in its November 20, 2019 final denial, the reasons and deficiencies it alleged existed in Plaintiff's evidence/claim were not inconsequential *to Lincoln,* they were the rationale and basis for *why* it denied her LTD claim.

94.     All of the reliable evidence Plaintiff submitted to Lincoln consistently proved she was unable to work in her own occupation*,* and that she met the "Own Occupation" definition of disability set forth in the Policy, due ***solely*** to her disabling diagnosis/medical condition that is not a "Pre-Existing Condition" as that term is defined in the Policy.

95.     During its review, Lincoln negligently and intentionally committed numerous ERISA procedural violations identified herein that allowed it to unlawfully deny Plaintiff's LTD claim.

96.     Lincoln's ERISA procedural violations include, but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing all of Plaintiff's reliable evidence which proved she met the "Own Occupation" definition of disability in the Policy due solely to a diagnosis/medical condition that was not a "Pre-Existing Condition" as that term is defined in the Policy and that Plaintiff was entitled to benefits.

97. In evaluating and denying Plaintiff's LTD claim, Lincoln failed to fulfill its fiduciary duty to her because it did not administer it, "solely in [her] best interests and other participants" which it failed to do. [1] *See* 29 C.F.R. § 1104(a).

98. Lincoln failed to adequately investigate Plaintiff's claim and failed to engage her in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her claim/appeal, and to afford her an opportunity to prove she is disabled as that term is defined in the Policy due ***solely*** to a diagnosis/medical condition that is not a "Pre-Existing Condition."

99. Plaintiff alleges Lincoln's review was neither full nor fair and violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for many reasons including, but not limited to: erroneously applying the "Pre-Existing Condition Exclusion" set forth in its Policy; by failing to credit Plaintiff's credible, reliable evidence which proved Plaintiff was disabled due solely to a diagnosis/medical condition that is not a "Pre-Existing Condition;" by failing to have Plaintiff's claim reviewed by a truly independent medical professional/consultant; by de-emphasizing, cherry picking and selectively reviewing Plaintiff's evidence so it could assert the "Pre-Existing Condition Exclusion" set forth in its Policy; by providing a biased and one sided review of Plaintiff's claim that failed to consider all of the evidence submitted by her and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim and its approval; by failing to engage Plaintiff in a "meaningful dialogue" so she and

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

her treating and/or evaluating medical/vocational professionals could submit the evidence that Lincoln believed was necessary to perfect her claim so it could be approved.

100. Plaintiff alleges one reason Lincoln provided an unlawful review that was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested as a result of Lincoln's roles as the decision maker and the payor of benefits in Plaintiff's claim.

101. Lincoln's conflict of interest provided it with a financial incentive to deny Plaintiff's LTD claim, because every dollar it saved by not paying Plaintiff's LTD claim has now resulted in a profit for Lincoln.

102. Lincoln's blatant self-serving actions are similar to the conflicted and unlawful review by another conflicted insurance company in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011), where the Court referenced insidious nature of these conflict of interests by stating, "The plan with a conflict of interests also has a financial incentive to cheat."

103. When Lincoln denied Plaintiff's LTD claim, it cheated her out of benefits in the same manner the insurance company cheated Mr. Salomaa out of his benefits.

104. Regardless of the standard of review, discretionary or *de novo*, Plaintiff is entitled to discovery regarding Lincoln's aforementioned conflicts of interest, its bias and business relationships referenced herein, as well as the conflicts of interest of any third-party vendor(s) hired by Lincoln and any medical professional (including but not limited to Dr. Feitelson) Lincoln employed or retained to be involved in its review of Plaintiff's claim.

105. Regardless of the standard of review, the Court should permit discovery so it can properly weigh and consider the nature, extent and effect that *any conflict of interest* and/or any ERISA procedural violation had on influencing Lincoln's decision to deny Plaintiff's LTD claim.

106. Plaintiff asserts that any third-party vendor retained by Lincoln, and in turn, any medical professional hired by a third-party vendor to review evidence in Plaintiff's claim, operated under a conflict of interest due to their extensive business relationship with Lincoln and their relationship with the disability insurance industry in general.

107. With regard to whether Plaintiff met the "Own Occupation" definition of disability set forth in the Policy during the period of August 6, 2018 through November 22, 2019, notwithstanding the fact Lincoln's Policy may include language purporting to confer discretion on Lincoln, the standard of review is *de novo*.

108. Lincoln's group long-term disability insurance Policy No. GF3-830-510682-01, confirms its "Governing Jurisdiction is Maryland and subject to the laws of that State."

109. Lincoln's group long-term disability insurance Policy No. GF3-830-510682-01, confirms that beginning on July 1, 2019, it has been renewed annually – each July 1st.

110. Lincoln's Policy No. GF3-830-510682-01 has been renewed once with the Maryland Department of Insurance.

111. As of 2013, Maryland law, specifically MD Ins Code § 12-211 (2013), invalidates and bars any clause from being contained in a disability income policy which contains a provision which delegates the sole discretion to interpret the terms of the policy to an insurance company.

112. Maryland law, specifically MD Ins. Code § 12-211 (2013), applies to disability policies which are renewed after **2013**, the date the statute was enacted.

113. Because Lincoln's Policy is governed by Maryland law, and Lincoln renewed the Policy after the date MD Ins Code § 12-211 (2013) was enacted, any language in the Policy purporting to grant discretion to Lincoln is void, unlawful and unenforceable pursuant to Maryland law.

114. Pursuant to MD Ins. Code § 12-211 (2013), the Court will make a *de novo* determination regarding whether Plaintiff meets the "Own Occupation" definition of

disability due ***solely*** to a diagnosis/medical condition that is not a "Pre-Existing Condition" and is entitled to LTD benefits for the period of August 6, 2018 through November 22, 2019.

115. If the Court concludes Lincoln's Policy lawfully confers discretion, the standard of review should still be *de novo* because Lincoln's numerous ERISA procedural and other violations as set forth herein are so egregious they warrant *de novo* review.

116. As a direct result of Lincoln's decision to deny Plaintiff's disability claim, she has been substantially injured and suffered damages in the form of lost LTD benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from Lincoln, the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter, from August 6, 2018 through November 22, 2019.

117. Upon information and belief, Plaintiff alleges other potential non-disability employee benefits may include but not be limited to, health insurance benefits and coverage, and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and the waiver of any premium(s) due on a life insurance policy which may provide coverage for her and her family/dependents.

118. Plaintiff seeks any and all employee benefits, including but not limited to disability benefits and any other benefits she may be entitled to and due from the Defendant as a result of being found disabled in this matter, from August 6, 2018 through November 22, 2019.

119. Pursuant to 29 U.S.C. § 1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendant.

120. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. § 20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendant's nonpayment of benefits.

1  WHEREFORE, Plaintiff prays for judgment as follows:

2  A. For an Order finding the evidence in Plaintiff's claim is sufficient to prove that her disabling diagnosis/medical condition is not a "Pre-Existing Condition" as that term is defined in the Policy and therefore, the condition is not subject to the Plan and/or Policy's Pre-Existing Condition Exclusion;

B. For an Order finding the evidence in Plaintiff's claim is sufficient to prove she met the "Own Occupation" definition of disability set forth in the relevant Plan and/or Policy due to a diagnosis/medical condition that is not a "Pre-Existing Condition," and she is entitled to disability benefits and any other non-disability employee benefits as a result of that Order, from the date she was first entitled to these benefits but was denied them, through the date she returned to work on November 22, 2019, with prejudgment interest thereon;

C. In the event the Court is unable to render a decision as to whether Plaintiff is entitled to LTD benefits from Lincoln for any reason, she seeks an Order remanding her claim to Lincoln so it can review the claim consistent with the Court's Order and render a determination consistent with the Order;

D. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

E. For such other and further relief as the Court deems just and proper.

DATED this 4th day of March, 2020.

SCOTT E. DAVIS. P.C.

By: /s/ Scott E. Davis
    Scott E. Davis
    Attorney for Plaintiff